Council, welcome to our umpteenth virtual oral argument session. It's not as good as being with you in open court, but it's been working. And if you have any technical difficulties during the argument, be sure to speak up or sing out or however you get in touch with the technical people, because we, we want to have a, a, a sound and helpful argument. So, Mr. Anderson, please proceed. Thank you, your honor. And again, yes, this is Chris Anderson. I'm representing Joanna Warmington. Uh, uh, and, uh, I understand, uh, uh, my opposing counsel is also on the line, uh, representing the university. Uh, may it please the court. I appreciate the opportunity to speak on behalf of Ms. Warmington. Uh, in this case, I will let you know that we do not want to be here. Coach Warmington was a successful coach at the University of Minnesota, Duluth. Uh, but she is now the fourth head coach female to sue the university related to, uh, sexual discrimination, Title IX claims and hostile work environment. And there's a reason for that. There is a, um, longstanding, uh, problem at the University of Minnesota, Duluth athletic department. And, uh, for Ms. Warmington, her issues began when, uh, Shannon Miller, the head hockey coach at UMD sued the university. And during the course of that litigation, which the university ultimately lost, coach Warmington was found herself, uh, becoming more and more isolated in the performance of her job duties. Uh, she had a hostile work environment. She was limited in her ability to perform her duties to her utmost capabilities, and we lay all this out, obviously in all of our, uh, in our briefing and we supplied the, uh, the complaint itself, but I want to highlight for you the background and how we arrived at this place after the Shannon Miller verdict that the university lost, coach Warmington was then targeted by UMD, uh, and she was identified as, uh, being placed on a leave of absence because student athletes had complained against her. The university had actually used those athletes to investigate coach Warmington. They improperly accessed her personal devices, devices that she used in the performance of her job duties because the university did not supply her with adequate materials for her to perform her job. There are a number of other examples in which case the university discriminated against and created this hostile work environment for coach Warmington. They did not supply her adequate funding to clothe her athletes in their uniforms. They prevented her from being able to travel to certain meetings. And so she had to use her own personal vehicle, unlike other head coaches, male coaches, especially when she was provided university related transportation. Those, the, that transportation did not have restroom facilities. Think about 60 female athletes traveling three, six more hours away and not having restroom facilities. And you can understand the circumstances that occur in, in that, uh, in that environment. So council, what's, what's your, what's your best case for, for, uh, adverse or unpleasant working conditions equaling a hostile work environment? Is that, is that a legal term has been defined and clarified by the Supreme Court? Your Honor, I would say the hostile work environment manifested it in a number of ways. Primarily... No, no, no. Give me the case first. Then, then you can go on with the argument. I asked you for your, your best case where adverse work conditions equals a hostile work environment. Give me one second, Your Honor. If you go to page 30 of our brief, solace versus the University of Minnesota is the best circumstance that I can identify. Thank you. And I'll note, Your Honor, that one of the issues that we're arguing in this case, of course, is that at the district court level, uh, solace is also one of these cases where, um, the, the case was decided on, um, a different standard than should be applied in our case that in, in that case, it's a summary judgment, uh, fact pattern when really we're under a motion to dismiss, uh, circumstance here. So, you know, one of our arguments is we made very clear in our briefing is that the district court, uh, applied the wrong standard, uh, to our pleading and... Yeah, but counsel, counsel, counsel, under, under, uh, Iqbal and Plumlee, the, the complaint has to, has to fairly raise an inference of severe and pervasive, uh, hostility, and so I, I don't think the fact that the track, the track team didn't get, get enough, did enough, get enough clothing or big enough locker rooms, uh, comes even close to, to meeting the standard before we even get to the question of causation. That's my problem with, or my problem with your argument. I would say that the standard is, is more than I think what you have to look at, Your Honor, I respectfully disagree, of course, with, with, um, with, with the conclusion that, um, the standard was not met in Coach Warmington's situation, I would say that there are a number of circumstances. Yes, if, if you said in isolation, merely, uh, clothing, merely locker room facilities, you look over a pattern of 11 years for this coach and you start to see the restrictions on her budget, the restrictions on her coaching ability, her ability to be able to communicate with athletes regarding nutrition and training, her, um, the restriction that she had and her team had related to transportation, the restrictions that they had on training facilities, not just, not just the facilities and the practice times that they had to modify or change or get kicked off the track because the football team wanted to use it, it's restriction on ability to go to weight training, it's the restriction on her ability to communicate with the athletes regarding training, their own training programs, health and, and personal nutrition issues. But then also you lead into, uh, not supplying her again, think about one 60 athletes and not having trainers to work with the athletes for injuries, massages, um, you know, stretching other issues. So then coach Warmington is forced to perform those duties as well as be head coach, recruit and do scholarship, uh, fundraising. Unlike other coaches in her situation, they all had assistant coaches and they all have the ability to be able to form those duties using the proper assistance that the university provided everyone, but coach Warmington. And then you have athletes then turn on her and say, yeah, she massaged me. It was a sexual in nature because she was massaging our legs. No, she was a coach who was performing her duties that others would not perform. Let me, let me interrupt you. If you could hear me and ask you simply this, you're correct. That most of these cases are summary judgment cases, but are you familiar with the Blomker case, B-L-O-M-K-E-R? Uh, because it is a motion to dismiss case. And it's a lot similar to this case in that, uh, uh, sexually suggestive gestures, and, uh, this was by over a three year period by two different men to a female, um, and seven specific harassment allegations. Uh, so if you're familiar with the Blomker case, is it the most similar to this case? I am not familiar with that case, but I would, I would argue your honor that the pervasive nature of the university's step-by-step treatment of coach Warmington manifest itself in her termination. And so what you have to find, and when you look at the totality of our complaint, you will see that the university was marching to a drumbeat of termination, but they needed a cover story to do so. And that's why I introduced the Shannon Miller trial at the beginning. This university's athletic department could not fire a female coach without some sort of cover. So they had to create this investigation in order to find additional information. Ultimately, she was terminated for issues unrelated to the investigation being launched and how she was put on leave. Part of why the university supplied her with the settlement and release agreement that they provided. We, we put it into our initial complaint and we summarized it in, in our report, but the university supplied that to her on three days notice in order to attempt to coerce her, to sign the settlement and release, to absolve them of all employment related claims she had against them because they knew they were exposed to her treatment and how they treated her during the course of this time. I would, I would conclude with the fact before I, I have about a minute left before I need to reserve time for my rebuttal and I would, I would let the court know that these are all, these look to be very disparate and far reaching facts. And I understand the difficulty sometimes of applying the law to the far reaching facts that occur over an 11 year period. But there is no doubt that under the pleading standard that we met, that we have given the university notice of our claims, that they are aware of what these claims are. And then if you apply the proper standard to this case, you will see that at this stage, her complaint is plausibly identifying the sexual discrimination, the hostile work environment, and the Title IX issues that we raise. I'll reserve my remaining five minutes. Thank you. Thank you. Ms. Gallia. Yes. Good morning, your honors. My name is Carrie Ryan Gallia. I'm an attorney at the University of Minnesota, and I'm here today on behalf of the Appalee Regents of the University of Minnesota. May it please the court. The issue in this case is not whether appellant Joanna Warmington's complaint is pled at length or pled with passion. The issue is whether it states a claim upon which relief can be granted. It does not. Ms. Warmington presents two claims to the court in her appeal. First, she asserts that the district court erred in dismissing her Title VII sex discrimination claim. Instead, the claim was properly dismissed because Ms. Warmington fails to allege that the university was motivated by her sex in its decision to discharge her. Now, counsel, let me stop you. I'm looking at your brief from pages about nine to 12. You state in response to it, in support of a 12B6 dismissal, an argument based on the absence of facts in the complaint, which in my, the argument in my view is squarely contrary, not only to Swierkiewicz of the Supreme Court, but my decision for the Eighth Circuit in Ring almost 20 years ago. You argue flat out, there's no, there's no, there's no allegation of facts, which could, which could satisfy the prima facie case test, which of course is a moving target depending on how the case develops. So I think on the Title VII claim, you've simply, your, your, your defense of the district court tells me there's a serious problem with the standard, with the standard applied. Your Honor, the Eighth Circuit has also held that the prima facie case is a useful tool as a backdrop for measuring the plausibility of a- That was, that was dicta, counsel. Well, it's, it's, let me say this. It's almost, it goes without saying that you, you might, you, the judges and lawyers might refer to what ultimately has to be proved to weigh whether there's a fair inference to be drawn from the, from the complaint of, of, of a cause of action. But here the allegation is that your, your client having good reason to be more than annoyed with Coach Warmington over the course of years, coopered up a, a, a phony suspension and fomented students to make false complaints, which were then investigated at great length, but without much notice to produce a report on which the termination was based and that, that I can't imagine adding to that conclusory allegations of the requisite Title VII bad intent, I can't imagine a more fair statement of a, of a Title VII claim. What Ms. Warmington has to allege is that the university was motivated by her sex in the, in the action it took against her, which was the decision to discharge her. That can be alleged conclusory, in conclusory fashion. The facts have to support, have to support the inference to justify the case going on, but you can allege bad intent. How can you do it other than in conclusory, an ultimate allegation is conclusory. At the same time, the facts alleged, if taken as true, have to make that claim plausible. And what Ms. Warmington has offered the court is a lengthy complaint with 19 appended exhibits that include the investigative report. Ms. Warmington argues that the university encouraged the students to raise complaints against her, but that allegation is not in the complaint. The allegation in the complaint is that five student athletes on Ms. Warmington's team came forward and brought claims against her. And the university is obligated under federal law and policy to investigate those complaints. Ms. Warmington offered you the lengthy investigative report and she offered you her response to that report. So the court is in a position to weigh the allegations in the complaint and the she has offered the court. It is not plausible that the university was motivated by her sex. What's implausible about it? The scenario I described and you incorporated most of it in your response. You didn't incorporate the allegations of 11 years that we hear this morning. I forget that, but immediately preceding the suspension, there was reason to be upset with her as a coach. And the gender comes a little in this environment that the relationship to gender is not far-fetched, it seems to me. But her same complaint also alleges that women coaches were treated more favorably than she was. She again and again alleges that she was singled out, that she was treated unlike any other coach. That's summary judgment stuff. That's not pleading stuff. She doesn't have to be able to prove everything she pled. She has to plead enough and I suspect this one is over pled by a bushel basket. But all we have to do is we have to boil it down and see whether within the four created that are sufficiently plausible to have the case move on. And I don't think the district court looked at it that way on the Title VII case claim. The district court was all hung up on whether years of undervaluing and under-budgeting women's teams was sufficient. And I agree with the district court, it wasn't. But that to me isn't the essence of the Title VII wrongful termination claim. The inferences the court takes have to be reasonable and the university contends that it's not reasonable to infer that this was based on sex when she also alleges that other teams with women were treated more favorably, that other women coaches were treated more favorably, and that complaints were brought forth against her that the university was obligated to investigate under policy and law. All of that is before the court in this complaint. Well, counsel, let me ask it to you this way. As you know, a thrust to the other side is that all the authority is summary judgment cases. And the Blomker case is a motion to dismiss case, but it's about the hostile environment. So do tell me, what's your best case, your closest case from us or the Supreme Court about the Title VII claim on a motion to dismiss? Your Honor, I don't want to review my entire brief right now. I could submit a supplement to the court highlighting this. Sure, a 28-J letter would be fine. I will do that as soon as the argument is heard. I will dismiss on a Title VII. That's kind of similar to this case, of course. Yes. No, I understand. Proceed. You're right that the Blomker case is a hostile work environment case, but the Blomker case in this court's decision in March in the Cook v. George's case, both of those cases say that it is fair game to look at the prima facie case under McDonnell Douglas, not hold a litigant to that as a pleading standard. It very clearly is not a pleading standard for the reasons that Judge Loken mentioned. The prima facie case is a flexible standard that will plug into the context of any given case, but it can be useful to test the plausibility. Here, she doesn't have any examples of men in a similar situation who were not investigated, so that can be helpful for the court in measuring the case. Ms. Warmington's complaint also fails to state a hostile work environment claim. To state a hostile work environment claim, she needs to plead five essential elements, that she's a member of a protected group subject to unwelcome sexual harassment, that there must be a causal nexus between harassment and the plaintiff's sex, that the harassment must be so severe or pervasive as to affect the terms and conditions of employment, and that the university knew about this and failed to take action. Here, her claim fails for at least two reasons. First, she does not allege that the harassment affected the terms or conditions of her employment. To meet the hostile work environment standard, the harassment must be so pervasive or severe as to permeate the work environment, and that's an objective standard. Here, she alleges that she was barred from setting up at conference meets, that certain male coaches played golf in the hallway, that she did not receive a gift after winning a coaching award. She alleges that the men's track and cross-country coach made unwelcome comments about women, allowed men to drink alcohol and change on the bus, and knew of an unclothed race. These allegations fall short of conduct that this court has found as a matter of law not to be severe and pervasive. The Blomker case, of course, is an example of that. In that case, the plaintiff complained of two co-workers threatening to touch her breasts, approaching her, aroused, standing physically close to her, and spreading their legs in front of her. That was found as a matter of law not to be severe or pervasive for Title VII purposes. The Duncan v. General Motors case from this court has similar conduct of overt sexual nature that was found not sufficient to be severe or pervasive. Duncan is a summary judgment case, isn't it? It is a summary judgment case. So while you're on that, what motion to dismiss cases do you have in a hostile work environment besides Blomker? I think Blomker is the best case for the university, and I could supplement that. Is it the only Eighth Circuit case we can find? It is the most recent Eighth Circuit court case that I have found, and I don't recall off the top of my head if there's another Eighth Circuit court case affirming a hostile work environment at the motion to dismiss stage. Thank you. And it can be useful to look at the summary judgment cases. Looking at them does not change the standard that the court is applying here. In a hostile work environment case, the unwelcome harassment is judged both subjectively and objectively. So the plaintiff is in the position in the pleading to identify the conduct that she has identified as unwelcome. Then the question is whether that meets the objective standard, whether that is objectively hostile for the purposes of Title VII, and where a summary judgment case or a case making a decision as a matter of law after trial has held that the conduct is not severe or pervasive as a matter of law, that can plug into the objective prong of the severe or pervasive analysis to decide whether it's plausible that the plaintiff has met that bar in her pleading. Her hostile work environment claim also fails because she does not allege that she reported any of this unwanted harassment to the university. She argues in her brief that she took complaints to UMD Human Resources, but there's only one allegation to that effect in the complaint, and it appears in paragraphs 57 and 58 where she alleges complaining about her supervisors and two specific female athletics administrators. She has no allegation that she complained about her peers, that she complained about any of the conducts that she identifies in paragraphs 270 through 273 of her complaint. Absent a report to the university so that the university could take corrective action, a hostile work environment claim fails. So for these reasons, your honors, and for those in our briefing, the university respectfully asks the court to affirm the district court's dismissal with prejudice of Ms. Warmington's complaint. Did you say earlier that there's no allegation in the complaint that the university ginned up the complaints from the students that triggered this investigation of the coach? Was that your assertion earlier? I have not found that allegation in the complaint. The complaint at the very outset, at paragraph two, it says that the student athletes were acting in concert. To me, that reads that the five student athletes came together as five student athletes. I don't see an allegation that the university approached student athletes, said, whispered to them, please come forward with a complaint, give us a reason. I don't see that allegation in the complaint. Yes, you read acting in concert to mean in concert with each other. That is the five students acting together came forward. Right. I think that's the closest I could get to an implication that the university was putting students up to this, but I don't see that allegation that the university sort of falsified these complaints or put students up to the anywhere in the complaint. Yeah, all right. I understand. It doesn't say acting in concert with the university. It says five athletes acting in concert initiated a complaint. Right, so that the five women on the team came forward together with their complaint. All right. I understand. Thank you. Your Honor, I can't hear you. How many of the complaints were before as opposed to after Coach Warmington being put in suspension? All of the complaints were before. She was placed on administrative leave during the investigation. So the five student athletes came forward with their complaint and shortly thereafter, she was placed on administrative leave during the pendency of the investigation. I thought she'd been put on leave for the spring season and then the students complained. I've got that wrong? Right. The timing is the inverse, that the students complained and then the university placed her on administrative leave. Thank you. Thank you, Your Honors. Your Honors, on that particular fact pattern, I would say that part of what we're learning through this investigation is we do not know when many of the complaints were made. The university has claimed that these complaints are what prompted Coach Warmington being placed on leave. Coach Warmington never saw any of the evidence against her and we do not know how many complaints came before. We certainly know that during the witness and investigation phase that the athletes acted in concert both with the and under the applicable procedures in place by the Department of Education at that time, the university merely needed to find a preponderance of evidence standard, meaning that if two or more of the athletes said something, they believed it true versus what Coach Warmington could rebut based on the information that she could provide during the course of the investigation. I will also let you know that when the investigations report was finally Question. Doesn't paragraph two of your complaint allege that she was placed on administrative leave after the students initiated the complaint? And doesn't that right there allege the timeline that you just disputed? Your Honor, I would clarify. I would clarify that that the complaint by saying yes, we we we accept we accepted for purposes of the complaint. The university's position that four or five athletes came forward and and level charges against Coach Warmington. That ignores, though, the fact that the ultimate report issued by the individuals, one of which was a member of the public. Well, I was just talking to the timeline because a minute ago you on your rebuttal argument, you alleged it's unclear what the order was and whether she was terminated before the students came forward or placed on leave and so forth. But your own complaint says the timeline was students complain, then she's placed on leave. I just wanted to clear that up. Yeah, so you're right, Your Honor. There were initial complaints by four student athletes that launched a broader investigation after Coach Warmington was placed on leave. And that's that was the broader investigation was where then the collusion between the university and the student athletes occur. We now know that in aftermath, as we've learned. What's the allegation about collusion? What do you mean by that? And where's the allegation? We know that in at page paragraphs 30, 34 through. Well, that says that the university coordinated an investigation on Title with the help of the Vogel law firm. But right, correct. That's all they need. But collusion, they were just carrying out their obligations under Title IX. And I understand you think they got it wrong in the end and that they used a preponderance standard, which is what the law required at the time. But how does that allege sex discrimination? So the investigation itself does not allege sex discrimination. So answering the first part of your question first, if you look at 38 through about 55 of our complaint, you will see that the student athletes colluded with each other. And we have since learned that the university and they've essentially admitted this fact that the university authorized student athletes to go in and look at Coach Warmington's personal devices as a follow up during the investigation phase before Coach Warmington was placed on leave. So we know that there was collusion between the university and the student athletes. As far as the sexual discrimination standpoint, I would say that the tie to the investigation to sexual discrimination is the investigation became the pretext to relieve Coach Warmington of her duties because the university knew that she had these complaints brewing and that they needed a way to get rid of her. And the only way for them to get rid of her was to create this salacious report that she was violating the sexual harassment policy of the university and coerce her into signing a settlement and release without legal counsel representation and therefore absolve the university of all of its sins. Now you say that the you've since learned that the university authorized some sort of intrusion into the coach's computer. Is that alleged in the complaint? It is not alleged in the complaint, your honor. But you can draw the inference from the information that we provide in the complaint itself. Only one lawyer allowed to argue, first side. Thank you, your honor. Procedurally, if I would just simply ask the court that if the defendant is allowed to supplement the record relating to Blomkir that Coach Warmington also have the opportunity to address that case. Well, we're not inviting briefs. The 28J can just give us the citation. Understood. Thank you, your honor. Very good, counsel. The case has been thoroughly briefed and well argued. Important issues, we'll take it under advice.